**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ANITRA LINZY** ***on behalf of the estate of*** **CYNTHIA GREEN,** ***et al.*****,** | ) |
| **Plaintiffs,** | ) |
| **v.** | ) **Civil Case No. 23-1146 (RJL)** |
| **MEDSTAR WASHINGTON HOSPITAL CENTER,** | ) |
| **Defendant.** | ) |

# MEMORANDUM OPINION

November 18th, 2026 [Dkt. #31]

Plaintiff Anitra Linzy ("Linzy") sued MedStar Washington Hospital Center ("MWHC" OR "MedStar") for gross negligence related to the death of her mother, Cynthia Green, who contracted COVID-19 while at MWHC and died. MWHC has now moved for summary judgment because Ms. Green never shared a hospital room with a COVID-19 positive patient and because Linzy's new theories of gross negligence are not properly before the Court. I agree and will **GRANT** MWHC's Motion for Summary Judgment [Dkt. #31] in full.

## BACKGROUND

### I. Facts

On January 23, 2021, Ms. Cynthia Green went to MedStar Washington Hospital Center in an ambulance complaining of shortness of breath and chest pain. *See* Statement

of Undisputed Facts ("SUF") ¶ 5 in Def.'s Mot. for Summary Judgment [Dkt. #31] at 6. At the time, Ms. Green was 66 years old and had multiple health conditions, including renal disease, chronic pain, obesity, and coronary artery disease. *Id.* ¶ 4. She had been receiving dialysis treatments multiple times per week for her renal disease, and at the time she went to the hospital she had missed her most recent dialysis appointment. *Id.* ¶¶ 4–5.

Upon admission, Ms. Green was placed in a semi-private room reserved for patients without COVID-19. *Id.* ¶ 6. Medical records confirm that the other patient placed in Ms. Green's room was never diagnosed with or treated for COVID-19 during Ms. Green's stay there. *Id.* ¶¶ 7–8.

While at the hospital, Ms. Green received dialysis but continued to report pain at a level of 8 out of 10 or higher along with nausea and vomiting. *Id.* ¶ 10. On January 28, Ms. Green received antibiotics for possible pneumonia. *Id.* ¶ 13. On January 30, Ms. Green tested positive for COVID-19, and on February 2, she was diagnosed with pneumonia. *Id.* ¶¶ 14–15. From February 5 to February 7, Ms. Green was in the intensive care unit ("ICU") due to chest pain and shortness of breath. *Id.* ¶¶ 16–17. On February 13, she reported that she was feeling better but the next day she reported that she was experiencing shortness of breath. *Id.* ¶ 18. On February 15, Ms. Green's condition worsened and she went back to the ICU, where she was ultimately intubated. *Id.* ¶ 19. Ms. Green passed away on February 16. *Id.* ¶ 20.

## II. Procedural History

This is plaintiff Anitra Linzy's second suit against defendant MedStar Washington Hospital Center. Linzy initially sued MedStar in June 2022, alleging that MedStar

negligently caused the death of her mother, Ms. Cynthia Green. *See* Compl. [Dkt. #1], *Linzy v. MedStar Wash. Hosp. Ctr.*, No. 1:22-cv-1752 (D.D.C. filed June 17, 2022). I dismissed the case without prejudice because the District of Columbia's then-applicable COVID-19 immunity statute foreclosed Linzy's medical malpractice claim, but I noted that allegations of "gross negligence" would not be foreclosed by the immunity statute. *See* Mem. Op. [Dkt. #12], No. 1:22-cv-1752.

On April 25, 2023, Linzy filed a new complaint against MedStar principally asserting claims of gross negligence and wrongful death. *See* Compl. [Dkt. #2]. Linzy principally alleges that her mother was "recklessly placed into a room with an elderly patient who tested positive for Covid-19." *Id.* ¶ 20.

MedStar moved to dismiss Linzy's complaint on grounds that the COVID-19 immunity statute applies and that Linzy lacks capacity to sue on behalf of her mother. Mot. to Dismiss [Dkt. #5]. I denied MedStar's motion to dismiss on March 28, 2024. *See* Order [Dkt. #11].

On May 29, 2025, Linzy filed a motion for leave to amend the complaint. Pl.'s Mot. for Leave to Amend Complaint [Dkt. #25]. Linzy tried to add new allegations regarding "additional deviations from standard medical practices leading to Ms. Green's death," among other things. *See id.* at 2. On February 25, 2026, I denied Linzy's motion for failure to show good cause under Federal Rule of Civil Procedure 16(b). *See* Mem. Order [Dkt. #30]. I concluded that Linzy "ha[d] not exercised diligence in seeking leave to amend" due to the long delay between the production of Linzy's expert report and Linzy's motion to amend shortly before the close of discovery. *Id.* at 2–3. I also held that "granting Linzy's

motion would prejudice MWHC by permitting Linzy to revise her factual theory of the case near the close of discovery and over two years after Linzy filed her original complaint." *Id.* at 4.

On March 19, 2026, MedStar moved for summary judgment on all of Linzy's claims. *See* Mot. for Summ. J. ("Mot.") [Dkt. #31]. Linzy opposes. *See* Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Opp'n") [Dkt. #36]. On May 13, 2026, MedStar filed its reply, *see* Def.'s Reply in Supp. of Its Mot. for Summ. J. ("Reply") [Dkt. #37], and the motion is ripe.

## STANDARD OF REVIEW

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute of material fact exists when there is sufficient "evidence on which the jury could reasonably find for the [non-movants]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). When deciding a motion for summary judgment, the Court "must assume the truth of all statements proffered by the non-movant except for conclusory allegations lacking any factual basis in the record." *Dist. Intown Props. Ltd. P'ship. v. Dist. of Columbia*, 198 F.3d 874, 878 (D.C. Cir. 1999).

## DISCUSSION

Linzy has two main claims against MedStar: professional gross negligence and wrongful death. Linzy concedes that her original theory of the case—that MedStar was

grossly negligent for placing Ms. Green in a room with a COVID-19 positive patient—has been disproved by MedStar's medical records. Opp'n at 1. Linzy also concedes that her wrongful death claim is barred by the statute of limitations. *Id.* Linzy nevertheless attempts to argue new theories—that MedStar was grossly negligent in "failing to discharge Ms. Green within 24-48 hours and in administering IV pain medication to her while she was infected with COVID." *Id.* Summary judgment is warranted for MedStar because (1) Linzy cannot assert new factual theories not in the complaint through her summary judgment briefing, and (2) in any case, her new theories fail to show gross negligence.

*First*, Linzy cannot raise her new factual theories of gross negligence in her opposition to MedStar's motion for summary judgment. I already denied Linzy's motion to amend the complaint to raise these new theories because of Linzy's undue delay. *See* Mem. Order [Dkt. #30]. Linzy still tries to press these theories in her opposition brief. *See* Opp'n at 4–8 (arguing that it was grossly negligent for MedStar to fail to discharge Ms. Green within 24 to 48 hours and to administer IV pain medication to her). But it is "well established that a party may not amend its complaint or broaden its claims through summary judgment briefing." *Trudel v. SunTrust Bank*, 288 F. Supp. 3d 239, 250 (D.D.C. 2018) (quoting *District of Columbia v. Barrie*, 741 F. Supp. 2d 250, 263 (D.D.C. 2010)); *see also Weatherspoon v. Azar*, 380 F. Supp. 3d 65, 75 (D.D.C. 2019) (similar); *Jo v. D.C.*, 582 F. Supp. 2d 51, 64 (D.D.C. 2008) (similar). Linzy's claim of gross negligence against MedStar now rests exclusively on theories that appear nowhere in her complaint, so summary judgment is warranted for MedStar on this ground alone.

*Second*, even if Linzy's new theories of gross negligence were properly before me, they are meritless. "A finding of gross negligence . . . 'requires such an extreme deviation from the ordinary standard of care as to support a finding of wanton, willful and reckless disregard or conscious indifference for the rights and safety of others.'" *Tillery v. D.C.*, 227 A.3d 147, 151 (D.C. 2020) (quoting *District of Columbia v. Walker*, 689 A.2d 40, 44 (D.C. 1997)). "For gross negligence 'to be meaningfully distinguished from simple negligence,' there must be 'serious aggravating factors . . . beyond those necessary to establish simple negligence in the first place.'" *Id.* (quoting *District of Columbia v. Henderson*, 710 A.2d 874, 877 (D.C. 1998)).

At most, Linzy's expert establishes disputes of fact about whether MedStar violated the standard of care—but nowhere does Linzy identify specific opinions or allegations that there were "serious aggravating factors" beyond mere negligence. *Tillery*, 227 A.3d at 151. Linzy argues that her expert "identified numerous instances where medical standards of care were not adhered to during Ms. [Green's] treatment." Opp'n at 4; *see also id.* at 7 ("Dr. Daniel testified that the standard of care for admitting and discharging a patient in Ms. Green's condition . . ."). Because mere breaches of the standard of care are insufficient to establish a claim for gross negligence, summary judgment can be granted to MedStar on this ground as well.

## CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment [Dkt. #31] is **GRANTED**. An accompanying order will issue contemporaneously with this opinion.

RICHARD J. LEON
United States District Judge